United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYNE JEROME ROBERTSON,

            Plaintiff,

  vs.

ROLF CUSACK, JOSEPH McGRATH, and
DOES 1-20,

            Defendants.

_____/

No. C 03-3496 MEJ

**ORDER DENYING DEFENDANT
JOSEPH McGRATH'S MOTION TO
DISMISS; VACATING HEARING**

**ORDER SCHEDULING CASE
MANAGEMENT CONFERENCE**

## I.  INTRODUCTION

      Plaintiff Wayne Jerome Robertson, an inmate at Pelican Bay State Prison, brings claims for violation of his civil rights under 42 U.S.C. § 1983, negligence, and negligence per se pertaining to an alleged attack by two fellow inmates on January 12, 2003.  Before the Court is defendant Joseph McGrath's Motion to Dismiss, filed July 14, 2006.  (Doc. #63.)  Upon review of the parties' arguments and relevant legal authority, the Court deems the matter appropriate for decision on the papers, VACATES the August 24, 2006 hearing, and DENIES McGrath's motion for the reasons set forth below.

## II.  BACKGROUND

### A.     Factual Background

      The following factual background is taken from Robertson's First Amended Complaint (Doc. #58).  Robertson is an inmate at Pelican Bay State Prison.  On January 12, 2003, Robertson was housed in cell 221 of the A-6 housing unit in general population.  Defendant Rolf Cusack, a

1  correctional officer at the prison, was assigned to the control booth of that housing unit.  On that

2  day, Cusack failed to secure the housing unit prior to releasing Robertson from his assigned cell and,

3  as a result, two inmates attacked him with a homemade weapon, causing Robertson physical injury.

4         In his amended complaint, Robertson alleges that conflicting instructions regarding the

5  policies and procedures to be followed when releasing inmates from their cells were issued to

6  Cusack and other correctional officers at the prison, and that defendant Joseph McGrath, then

7  Warden of the prison, knew about the conflicting instructions, knew that prison staff were confused

8  by the conflict, and knew that prison staff were not taking adequate steps to ensure inmate safety.

9  **B.     Procedural Background**

10        On July 28, 2003, Robertson filed a *pro se* complaint under 42 U.S.C. § 1983 for the injuries

11 he claims to have sustained during the January 12 incident.  On December 7, 2005, the Honorable

12 Saundra Brown Armstrong appointed counsel for Robertson (Doc. #45).  On January 24, 2006, the

13 parties voluntarily consented to magistrate jurisdiction and the case was reassigned to Magistrate

14 Judge Maria-Elena James.  (Doc. #48.)

15        On February 2, 2006, Plaintiff filed a Motion for Leave to File First Amended Complaint

16 (Doc. #50), which the Court granted on April 4, 2006.  (Doc. #55.)  Robertson filed his First

17 Amended Complaint on April 10, adding Joseph McGrath as a defendant and adding causes of

18 action for negligence and negligence per se.  Cusack filed an Answer to the amended complaint on

19 April 25.  (Doc. #59.)

20        On July 14, 2006, McGrath filed a Motion to Dismiss (Doc. #63), as well as the Declaration

21 of D. Bradbury in support thereof.  (Doc. #65.)  McGrath also filed a Request for Judicial Notice.

22 (Doc. #64.)

23        On August 3, 2006, Robertson filed an Opposition to McGrath's motion (Doc. #70), as well

24 as the Declaration of Esther L. Klisura in support thereof.  (Doc. #71.)  Robertson also filed an

25 Objection to McGrath's Request for Judicial Notice.  (Doc. #72.)

26        On August 9, 2006, McGrath filed replies to Robertson's oppositions.  (Docs. ## 73, 74.)

27 ///

28                                        2

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

### III. DISCUSSION

2     In his motion, McGrath moves this Court to dismiss Robertson's action against him on three

3  grounds: (1) failure to exhaust administrative remedies, (2) the claims are barred by the applicable

4  statute of limitations, and (3) failure to comply with the California Tort Claims Act.

5  **A.    Request for Judicial Notice**

6     In support of his motion to dismiss, McGrath requests that the Court take judicial notice of a

7  Minute Order from the Superior Court of the State of California for the County of Los Angeles,

8  which states that Robertson is incarcerated for a life term without the possibility of parole.  (Doc.

9  #64, Ex. A.)  Robertson objects to the minute order, arguing that McGrath provided no foundation to

10  verify its accuracy, and that it has no relevance to the instant proceedings.  However, the Court may

11  take judicial notice of court records in other cases.  *United States v. Wilson*, 631 F.2d 118, 119 (9th

12  Cir. 1980).  Further, the Court finds that the minute order is relevant to McGrath's statute of

13  limitations argument as the statute of limitations for California inmates is determined by their term

14  of incarceration.

15     Robertson also objects to McGrath's request on the ground that the request is an attempt to

16  bias the Court with inadmissible character evidence.  However, as McGrath introduced the minute

17  order as evidence of Robertson's term of imprisonment, the Court finds that it is not an attempt to

18  introduce inadmissible character evidence.  Accordingly, the Court hereby GRANTS McGrath's

19  request and takes judicial notice of the Superior Court minute order.

20  **B.    Legal Standard**

21     A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) "tests the

22  legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  FRCP 8(a),

23  which states that plaintiff's pleadings must contain "a short and plain statement of the claim showing

24  that the pleader is entitled to relief," provides the standard for judging whether such a cognizable

25  claim exists.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  This standard is a

26  liberal one that does not require plaintiff to set forth all the factual details of his claim; rather, all that

27  the standard requires is that plaintiff give defendant fair notice of the claim and the grounds for

28

3

United States District Court

For the Northern District of California

1    making that claim. *Leatherman v. Tarrant County Narcotics Intell & Coord Unit*, 507 U.S. 163, 168

2    (1993) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

3           Under FRCP 12(b)(6), a motion to dismiss should be granted only if it appears beyond a

4    reasonable doubt that the plaintiff "can prove no set of facts in support of his claim which would

5    entitle him to relief."  *Conley*, 355 U.S. at 45-46.  For purposes of such a motion, all material

6    allegations in the complaint must be taken as true and construed in the light most favorable to

7    plaintiff.  *In re Silicon Graphics, Inc. Sec Litig.*, 183 F.3d 970, 980 n.10. (9th Cir. 1999).  The court

8    may also consider documents attached to the complaint in connection with a FRCP 12(b)(6) motion

9    to dismiss.  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing

10   *Cooper v. Bell*, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  If a plaintiff fails to attach to the

11   complaint the documents on which it is based, defendant may also attach to a FRCP 12(b)(6) motion

12   the documents referred to in the complaint.  *Lee v. City of Los Angeles*, 250 F.3d at 688-89.  In

13   addition, whether requested or not, the court may consider documents whose contents are alleged in

14   a complaint and whose authenticity no party questions, but which are not physically attached to the

15   plaintiff's pleadings.  *In re Silicon Graphics*, 183 F.3d at 986.

16          If the court dismisses the complaint, it must then decide whether to grant leave to amend.

17   The court "should grant leave to amend even if no request to amend the pleading was made, unless it

18   determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v.*

19   *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, courts should consider

20   factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure

21   to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of

22   the proposed amendment."  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

23   **C.     Application to the Case at Bar**

24          1.     Whether Robertson failed to exhaust his administrative remedies

25          McGrath first argues that Robertson failed to exhaust his administrative remedies because his

26   inmate appeal was limited to defendant Cusack's alleged misdeeds and did not allege, as he does in

27   his amended complaint, that McGrath was deliberately indifferent and negligent by issuing

28                                                        4

1   conflicting instructions.

2       In response, Robertson argues that he exhausted his administrative remedies by submitting a

3   timely Staff Complaint and appealing the review of that complaint through the final level of review.

4   Robertson further argues that McGrath himself participated in the administrative process in his

5   capacity as Warden, reviewing Robertson's appeal at the second-level stage of formal review.

6       The Prison Litigation Reform Act of 1995, codified at 42 U.S.C. § 1997e(a), mandates that

7   inmates exhaust their administrative remedies before bringing suit under 42 U.S.C. § 1983.

8   Exhaustion of administrative remedies is intended to serve two main purposes. *Woodford v. Ngo*,

9   126 S.Ct. 2378, 2385 (2006). First, exhaustion provides an agency with the "opportunity to correct

10  its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.*

11  (citations omitted). Second, "exhaustion promotes efficiency" because "[c]laims generally can be

12  resolved much more quickly and economically in proceedings before an agency than in litigation in

13  federal court." *Id.* The burden is on the defendant to establish that the plaintiff did not exhaust his

14  administrative remedies. *Wyatt v. Terhune*, 315 F.3d 1108, 1117-20 (9th Cir. 2003).

15      The State of California provides its inmates with a four-level administrative appeals process

16  designed to aggrieve any departmental wrongs which adversely affect an inmate's welfare. Cal.

17  Code Regs. Tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this

18  system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal

19  written appeal on a CDC 602 inmate appeal form, (3) second-level appeal to the institution head or

20  designee, and (4) third-level appeal to the Director of the California Department of Corrections. *Id.*

21  at § 3084.5. A decision at the Director's level of review constitutes exhaustion of an inmate's

22  administrative remedies for purposes of 42 U.S.C. § 1997e(a). *Id.* at § 3084.1(a).

23      Here, Robertson filed an inmate appeal on January 23, 2003, No. 03-00343, grieving the

24  January 12 incident. (Doc. #71, Ex. A.) In his appeal, Robertson describes the alleged incident and

25  states that Cusack failed "to follow institution policy, and procedure of institution lock down status

26  and memorandum of January 12, 2003 that was issued by the Warden, and A yard housing Facility

27  Captain." (*Id.* at 3.) In this inmate appeal, Robertson does not mention McGrath's alleged wrongful

28

5

acts, focusing solely on Cusack's alleged failure "to follow institution policy."  Thus, it would appear that Robertson never filed an inmate appeal against McGrath for any alleged misconduct and he failed to exhaust his administrative remedies for any such claims.

In his opposition, Robertson asserts that McGrath had "ample opportunity to address the mistakes that gave rise to the subject incident before Robertson filed this action" because he reviewed his appeal at the second level of review.  (Doc. #70 6:7-8.)  Robertson also argues that his amended complaint makes clear that he is attacking the policy itself because he alleges that his injuries were the result of a failure to follow a policy that would have protected him.  (*Id.* at 5:6-10.) The Court agrees that Robertson's amended complaint contains these allegations against McGrath, yet its analysis must focus on whether his administrative appeal contained them, thereby permitting the present action against McGrath.  Robertson's January 12 appeal contains no allegations concerning McGrath's misconduct - it simply alleges that Cusack failed to follow the prison's policy.

However, on July 18, 2005, Cusack filed a motion for summary judgment (Doc. #34) in this action, accompanied by a "Supplemental Declaration."  (Doc. #35.)  In this declaration, Cusack stated his belief that conflicting instructions existed for the operation of the unit.  (Doc. #35, ¶¶ 20, 23).  It is unclear how a reasonable investigation by the public entity would not have included a questioning of Cusack as to the reason for the subject incident.  For purposes of this motion, however, it is clear that the Court should provide Robertson the opportunity to prove facts in support of his claim.  If Robertson complained that Cusack failed to comply with prison policy, and Cusack in turn stated that conflicting instructions existed, then Robertson's claim form sufficiently disclosed facts to enable the Department of Corrections to investigate the merits of the claim.  Accordingly, Robertson did not fail to exhaust his administrative remedies.

2.      Whether Robertson's claims against McGrath are barred by the statute of limitations

McGrath next argues that Robertson filed his amended complaint past the statute of limitations.  In response, Robertson argues that his amended complaint relates back to his original complaint because they both arise from the same January 12, 2003 attack.

6

1    The statute of limitations in § 1983 civil rights cases is governed by state law.  *Wilson v.*

2    *Garcia*, 471 U.S. 261, 275 (1985).  Because civil rights actions are best characterized as actions for

3    injuries to personal rights, federal courts borrow the statute of limitations that applies to personal

4    injury actions.  *McDougal v. County of Imperial*, 942 F.2d 668, 672-74 (9th Cir. 1991).  In

5    California, that statute of limitations is two years.  Cal. Civ. Proc. Code § 335.1.

6    Here, Robertson filed his amended complaint over two years after the alleged incident.

7    However, where an inmate files an amended complaint, the relation-back doctrine must be

8    considered.  *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989).  The relation-back

9    provisions of state law govern federal civil rights actions when the state law is more liberal, as is the

10   case in California.  *Id.*  Under California law, an amended complaint filed after the statute of

11   limitations has run is not barred if it "relates back" to a timely-filed original complaint.  *Austin v.*

12   *Massachusetts Bonding & Ins. Co.*, 56 Cal.3d 596 (1961).  Under FRCP 15(c)(2), an amended

13   complaint relates back to the original complaint when "the claim . . . asserted in the amended

14   pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in

15   the original pleading."

16   McGrath argues that the relation-back doctrine is inapplicable because he was never named

17   as a defendant in Robertson's original complaint.  However, as discussed above, Robertson

18   complained that Cusack failed to comply with prison policy, and Cusack in turn stated that

19   conflicting instructions existed.  Thus, Robertson's amended complaint against McGrath relates back

20   to his original complaint against because the additional claims arose out of the occurrence set forth

21   in the original pleading.

22       3.   Whether Robertson failed to comply with the California Tort Claims Act

23   As to Robertson's negligence claim, McGrath argues that the Court lacks jurisdiction to

24   adjudicate this claim because Robertson failed to file a government claim form against him.  In

25   response, Robertson argues that he filed a claim form that described the incident, described the

26   relevant policy that was violated, described Robertson's injuries, and described the dollar amount of

27   the claim.  (Doc. #71, Ex. D.)  Robertson further argues that any reasonable investigation by the

28

7

1   public entity would have included a questioning of Cusack and would have resulted in discovery of

2   the asserted excuse for failing to comply with prison policy.

3          The California Tort Claims Act ("Act"), Cal. Gov't Code §§ 900 *et seq.*, requires plaintiffs to

4   file a claim with the Victim Compensation and Government Claims Board ("Board") before filing

5   suit against a public entity.  Cal. Gov't Code § 945.4.  "[T]he purpose of the claims statutes 'is to

6   provide the public entity sufficient information to enable it to adequately investigate claims and to

7   settle them, if appropriate, without the expense of litigation.'"  *Phillips v. Desert Hospital District,*

8   49 Cal.3d 699, 705 (1989).  Presentation of a claim to the Board is a mandatory prerequisite to

9   maintaining a cause of action against a public entity.  *State v. Superior Court [Bodde]*, 32 Cal.4th

10  1234, 1245 (2004).

11         Here, Robertson's government claim focuses solely on Cusack.  (Doc. #71, Ex. D.)  His claim

12  to the Board never names McGrath, nor does the claim cite McGrath's allegedly inconsistent

13  instructions grieved in Robertson's amended complaint.  Thus, it would appear that Robertson failed

14  to comply with the Act as to his claims against McGrath.  Robertson, however, argues that his claim

15  form substantially complied with claims presentation requirements against McGrath because he

16  listed the names of the employees he knew, at that time, to be involved and any reasonable

17  investigation by the Board would have resulted in the discovery of his claims against McGrath.

18         Strict compliance with the Act is not necessary; rather, the requirements are satisfied by

19  "substantial compliance."  *Johnson v. San Diego Unified School District*, 217 Cal.App.3d 692, 696

20  (1990).  Where there has been an attempt to comply, the test of substantial compliance looks at

21  "whether sufficient information is disclosed on the face of the filed claims to reasonably enable the

22  public entity to make an adequate investigation of the merits of the claim and to settle it without the

23  expense of a lawsuit."  *Id.* (internal citations omitted).  Here, the Court finds that Robertson

24  substantially complied with the Act.  Although Robertson did not list McGrath's name in his claim,

25  he provided sufficient information to reasonably enable the Department of Corrections to investigate

26  his claim and determine its cause.  The fact that Cusack stated that conflicting instructions existed

27  only furthers this finding.  Accordingly, Robertson complied with the California Tort Claims Act.

28

1    ///

2                                **IV.  CONCLUSION**

3           Based on the foregoing analysis, the Court hereby DENIES McGrath's Motion to Dismiss.

4    The Court shall conduct a Case Management Conference on September 14, 2006.  The parties shall

5    file their joint case management conference statement by September 7, 2006.

6           **IT IS SO ORDERED.**

7

8    Dated: August 14, 2006                    _____

9                                              MARIA-ELENA JAMES
                                               United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

9