IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE JEROME ROBERTSON, | No. C 03-3496 MEJ |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| OFFICER R. CUSACK, | **ORDER FOR PARTIES TO ATTEND FURTHER SETTLEMENT CONFERENCE; STAYING CASE MANAGEMENT DEADLINES** |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Wayne Jerome Robertson, an inmate at Pelican Bay State Prison, filed a complaint against Correctional Officer Rolf Cusack under 42 U.S.C. § 1983. On March 1, 2007, Defendant filed the present Motion for Summary Judgment. (Doc. #89.) For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

## II. BACKGROUND

**A.   Factual Background**

Plaintiff Jerome Robertson ("Plaintiff") is an African-American inmate at Pelican Bay State Prison ("Pelican Bay"). Defendant Rolf Cusack ("Defendant") has been employed by the California Department of Corrections since 1996 and has been a correctional officer at Pelican Bay since 1998. (Klisura Decl., Ex. B at 3:10-22.)

At least as recently as May 2002, Pelican Bay had a practice, at certain times, of segregating

inmates in the general population by race as part of its security measures. *Id*., Ex. C. In particular, the prison has segregated African-American inmates from Southern Hispanic inmates. *Id.*

On January 7, 2003, Buildings 6, 7, and 8 of Pelican Bay's Facility A were placed on a modified program adjustment by the Facility Captain due to a riot between African-American and Caucasian inmates on January 2, 2003. (Klisura Decl., Ex. D; Stanzler Decl., Ex. A.) The Program Adjustment sheet mandated that prisoners were to be escorted in restraints to medical, dental, and psychiatric appointments. (Stanzler Decl., Ex. A.) The modified program also mandated that prisoners were to be let out to the showers under a controlled release, one cell at a time. *Id.*

On January 12, 2003, Plaintiff was housed in a cell located on the second tier of Facility A, Building 6 ("A-6"). (Klisura Decl., Ex. A, 11:4-7.) At that time, Defendant was serving as a sick relief officer in A-6. (Cusack Decl. at ¶3.) As a sick relief officer, Defendant was assigned to positions in the institution that were short-staffed due to employee absences or other reasons causing shortage of staff. *Id.* On January 12, Defendant worked as a control booth officer, controlling the release of inmates from their respective cells. *Id.* at ¶6. When inmates are released from their cells in A-6, they are released into a common area ("day room"); they then proceed through the section door into the rotunda area. *Id.* at ¶8. The distance from the second tier staircase to the section door is about thirty feet. (Stanzler Decl. at ¶3.) A-6 housed inmates of all races, and they were not segregated by race. (Cusack Decl.at ¶¶ 5, 54.)

Defendant was assisted by two floor officers, Officers Clower and Patsel, who work with the control booth officer in monitoring and controlling access of inmates into and out of A-6. (Cusack Decl. at ¶¶ 9-10.) During his shift, Defendant contends that he searched for, but did not find the above-described Program Adjustment sheet for that day. *Id.* at ¶¶ 6, 11-12. Defendant states that it was his understanding that A-6 was on a modified program which allowed him to open multiple cells at a single time. *Id.* at ¶¶13-14. Defendant did not ask the Captain or Warden about the security instructions for that day. (Klisura Decl., Ex. A at 10:14-22.)

At approximately 11:20 a.m. on January 12, inmates Raymond Calderon and Enrique Segoviano were transferred into A-6 and placed in a single cell located on the first tier. *Id*., Ex. A at

2

11:9-13; Cusack Decl. at ¶36. Pelican Bay classifies Calderon and Segoviano as "Southern Hispanics." (Klisura Decl., Ex. E.) At approximately 12:25 p.m., Defendant released Calderon and Segoviano from their cell to get ready for showers. (Cusack Decl. at ¶38.) At around the same time, Defendant released Plaintiff from his cell because Plaintiff stated that he needed to go to medical for a shot. *Id.* As Plaintiff went downstairs, Calderon and Segoviano attacked him with an inmate manufactured weapon. (Klisura Decl., Ex. 1.) The parties dispute the length of the attack; however, it appears to have lasted ten-to-twenty seconds. (Cuscack Decl. at ¶42; Plaintiff's Objections to Defendant's Statement of Undisputed Facts, ¶25.) Defendant yelled at them to stop, pushed the alarm, and fired a soft rubber bullet at Segoviano. (Cusack Decl. at ¶42.) Officers Patsel and Clower responded to the scene and restrained the inmates within the disputed time period. (Cusack Decl. at ¶42.)

At 12:30 p.m. on January 12, Plaintiff was treated by the Pelican Bay medical staff. (Klisura Decl., Ex. F.) As a result of the attack, Plaintiff suffered four puncture-type wounds of approximately one to three millimeters on his back and neck. *Id.* Plaintiff's back also had scratch marks, but he was otherwise unharmed. *Id.* Plaintiff's puncture wounds were cleansed with saline and covered with triple antibiotic and bandaids. *Id.*

After the incident, Facility Captain L.M. Williams conducted a Fact Finding Investigation. (Stanzler Decl., Ex. A.) Officer Williams determined that Defendant had not followed the procedures outlined in the Program Adjustment for the week of January 7 through January 14, 2003, but his actions were not intentional. *Id.*

On February 23, 2003, Pelican Bay deemed Plaintiff the victim of the attack and referred the incident to the local District Attorney for possible prosecution of inmates Calderon and Segoviano. (Klisura Decl., Ex. G.) As a result of the attack, Defendant was disciplined by the California Department of Corrections for not following the program adjustment sheet. *Id.*, Ex. B at 3:24-4:5.

From Plaintiff's cell on the second floor, it was impossible to see the first floor cell occupied by inmates Calderon and Segoviano. (Klisura Decl., Ex. A at 11:20-23, 12:2-5.) Defendant, who was in the control booth at the time of the incident, had a view of both the first and second tier of A-

6. *Id.* at 11:15-18.

## B. Procedural Background

On July 28, 2003, Plaintiff filed a pro se complaint under 42 U.S.C. § 1983, asserting a single cause of action based on the January 12 attack, and naming one defendant, Officer Cusack. On December 7, 2005, the Honorable Saundra Brown Armstrong appointed counsel for Plaintiff and, at the same time, ordered a four-week stay of the action, which was lifted on January 4, 2006.

On January 24, 2006, the parties voluntarily consented to magistrate jurisdiction and the case was reassigned to Magistrate Judge Maria-Elena James.

On February 2, 2006, Plaintiff filed a Motion for Leave to File First Amended Complaint, which the Court granted. Plaintiff's First Amended Complaint added Joseph McGrath, the Warden of Pelican Bay at the time of the incident, as a defendant, and added causes of action for negligence and negligence per se. McGrath was subsequently dismissed. Plaintiff's amended complaint contains three causes of action: (1) violation of Plaintiff's Eight Amendment right against cruel and unusual punishment; (2) Negligence; and (3) Negligence Per Se.

On March 1, 2007, Defendant filed the present motion, as well as his Declaration and the Declaration of Jordan S. Stanzler in support thereof.

On April 6, 2007, Plaintiff filed an Opposition, as well as the Declaration of Esther Klisura and a Statement of Genuine Issues of Material Fact in support thereof. Plaintiff also filed Objections to Defendant's Statement of Facts.

On April 27, 2007, Defendant filed a Reply.

On June 14, 2007, the Court held a hearing on the matter. Esther L. Klisura appeared on behalf of Plaintiff, and Jordan S. Stanzler appeared on behalf of Defendant.

### III.   DISCUSSION

## A. Venue and Jurisdiction

Venue is proper in the Northern District of California because the events or omissions giving rise to Plaintiff's claims occurred at Pelican Bay in Del Norte County, which is located within the Northern District. 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this

action brought under 42 U.S.C. § 1983.  28 U.S.C. § 1331.

**B.     Legal Standard**

Summary judgment is proper when the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, discovery and affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 248. When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. *United States v. 1 Parcel of Real Property*, 904 F.2d 487, 492 n.3 (9th Cir. 1990) (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978).  However, the opposing party need not produce evidence in a form that would be admissible at trial in order to avoid a summary judgment. *Celotex*, 477 U.S. at 324.  Nor must the opposing party show that the issue will be resolved conclusively in its favor. *Liberty Lobby*, 477 U.S. at 248-49.  All that is necessary is sufficient evidence supporting the asserted factual dispute and requiring a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.*

The Court's function on a summary judgment motion is not to make credibility

determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, the evidence and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 631. However, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1966). Rather, a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. *Id.*

**C.     Application to the Case at Bar**

     1.     <u>Eighth Amendment Claim</u>

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures to provide for the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In particular, officials have a duty to protect inmates from violence at the hands of other inmates. *Id.* at 833. A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *Id.* at 834.

To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* He need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). However, before being required to take action, he must have more than a "mere suspicion" that an attack will occur. *Id.* When, as here, the prisoner seeks damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff maintains that Defendant was deliberately indifferent to his safety based on the totality of the circumstances. Plaintiff points to a history of racially-motivated violence at Pelican

6

Bay, such as the prison riot among African-American and Caucasian inmates ten days prior to his attack. That riot led to a modified program adjustment in A-6 which mandated that prisoners were to be escorted in restraints to medical, dental, and psychiatric appointments, and that prisoners were to be let out to the showers under a controlled release, one cell at a time. Plaintiff also points to Pelican Bay's practice, at certain times, of segregating inmates in the general population by race, including segregating African-American inmates from Southern Hispanic inmates.

Plaintiff directs the Court's attention to the submitted evidence, which shows that Defendant had been a correctional officer for seven years, and that he was more than six hours into his shift, yet he did not obtain the written security instructions from any of his supervisors. Plaintiff contends that these facts are enough for a reasonable fact finder to conclude that Defendant either refused to verify underlying facts that he suspected to be true or declined to confirm inferences of risk that he strongly suspected to exist.

Even taking all these facts into account, Plaintiff has offered no evidence from which deliberate indifference can be inferred. The Court's focus is on Defendant's mental state - his knowledge of facts surrounding the incident, and any inferences that he drew based on those facts. Although Defendant opened both cell doors, one cannot infer from that fact alone that he did so with deliberate indifference to a substantial risk to Plaintiff's safety. Calderon and Segoviano were transferred into A-6 approximately one hour before the attack, and there is no indication that Defendant knew or even suspected that they were intending to harm Plaintiff. In fact, that morning Defendant had already opened multiple cell doors, simultaneously, to let some thirty or more inmates out of their cells. (Cusack Decl. at ¶29.)

Further, although there is evidence that Pelican Bay segregated Southern Hispanics and African-Americans in the general population, Plaintiff has failed to rebut Defendant's statement that inmates in A-6 were not segregated on the basis of race. Plaintiff submits a May 20, 2002 Memorandum on the issue of segregation (Klisura Decl., Ex. C); however, that memorandum was effective May 21, 2002 through May 27, 2002, and does not show that A-6 was segregated on the date of the attack. Regardless, there is no evidence in the record that every inmate will attack any

7

1 other inmate as soon as the opportunity presents itself, and the Court declines to engage in the
2 assumption that a danger was obvious because Plaintiff is African-American and his attackers are
3 Southern Hispanics. Thus, there is no evidence which shows that Defendant suspected Calderon and
4 Segoviano would attack Plaintiff.

5 Second, even assuming there were facts from which Defendant could draw the inference that
6 a substantial risk of serious injury existed, Plaintiff has presented no evidence that he drew the
7 inference. In fact, the evidence is inconsistent with any deliberate indifference on Defendant's part.
8 Defendant yelled for the inmates to stop, sounded the alarm, and seemingly helped stop the incident
9 by firing a soft rubber bullet at Segoviano. The whole incident lasted no more than ten-to-twenty
10 seconds.

11 The most favorable evidence for Plaintiff is that Defendant did not comply with written
12 security instructions from his supervisors. However, setting aside the dispute as to whether
13 Defendant knew of the security instructions, the facts as alleged support at most an argument that
14 Defendant was negligent for failing to protect Plaintiff. As the United States Supreme Court made
15 clear in *Farmer*, negligence and even gross negligence are not enough to amount to an Eighth
16 Amendment violation. *Farmer*, 511 U.S. at 835-36 & n.4. Deliberate indifference is not shown by
17 merely stating that a defendant should have known of a risk; rather, deliberate indifference requires
18 an actual perception of a risk and does not exist merely where a reasonable person should have
19 perceived a risk.

20 Accordingly, Plaintiff has failed to raise a triable issue as to whether Defendant acted with
21 deliberate indifference to his safety. Even viewing the evidence in the light most favorable to
22 Plaintiff, no reasonable jury could return a verdict for him and against Defendant. Therefore,
23 Defendant is entitled to judgment as a matter of law on his deliberate indifference claim.

24     2.    <u>Qualified Immunity</u>

25 Even if a triable issue of fact did exist, the Court finds that Defendant is entitled to qualified
26 immunity on the claim of deliberate indifference. The defense of qualified immunity protects
27 "government officials . . . from liability for civil damages insofar as their conduct does not violate

28

8

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. Courts must first consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated with the facts as alleged, the inquiry ends and defendants prevail. *Id.* If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The first step under *Saucier* is to determine whether a constitutional violation was alleged. Plaintiff's complaint sufficed to allege an Eighth Amendment violation; however, as shown above, the evidence in the record does not support such a violation. Even assuming the evidence did establish an Eighth Amendment violation, that would only address the first step of the *Saucier* analysis.

The next step under *Saucier* is to consider whether the contours of the right were clearly established, an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. For an Eighth Amendment violation based on a condition of confinement (such as a safety risk), the prison official must subjectively have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834. Thus,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

9

> safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inferences . . . . Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity.

*Saucier*, 533 U.S. at 205.

Here, Plaintiff alleges that Defendant acted with deliberate indifference towards his safety when he failed to follow Pelican Bay's written procedures regarding the operation of A-6, thereby causing Plaintiff to be attacked by two other inmates. Assuming that Plaintiff has identified a cognizable violation of his Eighth Amendment right, the next step of the inquiry is a determination of whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Defendant argues that a reasonable control booth officer would have released the inmates in question, and would not have known it was unlawful to do so. Without the knowledge that Plaintiff faced a serious risk of harm, a reasonable officer would not have known it was clearly unlawful to release two inmates for showers and then release Plaintiff for a medical appointment. The Court agrees. Defendant's belief that he could release all three inmates from their cells without danger to Plaintiff was reasonable because he had no advance warning that Calderon and Segoviano intended to assault Plaintiff, and Officers Patsel and Clower were waiting to escort Plaintiff to the medical line. Further, even if he had been aware of the Program Adjustment sheet, it did not prohibit simultaneously opening one door for showers and one door for medical lines. Defendant's mistake was that he did not adhere to that part of the sheet that stated that for medical lines, an escort was required from the cell door. However, Defendant believed that an escort from the section door, rather than from the cell door, was appropriate and he had two officers waiting to escort Plaintiff at the section door. At most, the Court finds that Defendant mistakenly, but reasonably, perceived that Plaintiff's exposure in the given situation was not high. In this circumstance, he is entitled to qualified immunity. *Saucier*, 533 U.S. at 205. Thus, summary judgment based on qualified

immunity is appropriate.

### 3. Negligence and Negligence Per Se

Plaintiff also brings state law causes of action for negligence and negligence per se. To prevail in an action for negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries. *John B. v. Superior Court*, 38 Cal.4th 1177, 1188 (2006). To prevail in an action for negligence per se, the plaintiff must demonstrate that the defendant violated a regulation, the violation proximately caused injury to the plaintiff, the injury resulted from an occurrence which the regulation was designed to prevent, and the plaintiff was one of the classes of persons for whose protection the regulation was adopted. Cal. Evid. Code 669; *see also Nowlon v. Koram Ins. Center, Inc.*, 1 Cal.App.4th 1437, 1441-42 (1991).

In his motion, Defendant argues that he is entitled to absolute immunity under California law because it was unforeseeable that Calderon and Segoviano would attack Plaintiff. Defendant cites to *Weiner v. Southcoast Childcare Centers, Inc.*, 32 Cal.4th 1138 (2004), in support of his argument. In *Weiner*, the California Supreme Court held that a day care center was not liable where a third party deliberately drove his car through a chain link fence, killing two children and maiming others, because the criminal act was unforeseeable. *Id.* at 1150. The court held that "our cases analyze third party criminal acts differently from ordinary negligence, and require us to apply a heightened sense of foreseeability before we can hold a defendant liable for the criminal acts of third parties." *Id.* at 1149-50. The Court found "the particular criminal conduct so outrageous and bizarre, that it could not have been anticipated under any circumstances." *Id.*

The case at bar, however, is clearly distinguishable. The idea that inmates might attack another inmate is not outrageous and bizarre. While it is reasonable to believe that Defendant might not perceive any danger in the situation, he fails to show that such an attack could not have been anticipated under any circumstances. Accordingly, his absolute immunity argument fails.

Defendant next argues that he is entitled to qualified immunity under California Government Code section 820.2, which states: "Except as otherwise provided by statute, a public employee is not

1 liable for an injury resulting from his act or omission where the act or omission was the result of the
2 exercise of discretion vested in him, whether or not such discretion was abused." Defendant argues
3 that the timing of which cell doors to open, and when to open them, inherently involve questions of
4 judgment and discretion.

5       To determine which acts are discretionary, California courts do not look at the literal
6 meaning of "discretionary" because "[a]lmost all acts involve some choice between alternatives."
7 *Caldwell v. Montoya*, 10 Cal.4th 972, 981 (1995). Rather, immunity protects "basic policy
8 decisions," but does not protect "operational" or "ministerial" decisions that merely implement a
9 basic policy decision. *Johnson v. State of California*, 69 Cal.2d 782, 796 (1968). Thus, for immunity
10 to apply, the Defendant must show that the decision to release all three inmates is properly
11 considered as a "basic policy decision" made at the "planning" stage of Pelican Bay's operations,
12 rather than a "routine dut[y] incident to the normal operations" of his position. *Barner v. Leeds*, 24
13 Cal.4th 676, 685 (2000). "The scope of the discretionary act immunity 'should be no greater than is
14 required to give legislative and executive policymakers sufficient breathing space in which to
15 perform their vital policymaking functions.'" *Barner*, 24 Cal.4th at 709 (quoting *Tarasoff v. Regents*
16 *of University of California*, 17 Cal.3d 425, 445 (1976)).

17       The acts alleged here do not fit within the type of policy decisions that the Supreme Court
18 determined would be immune under the statute. While Defendant may be correct that his decision to
19 release all three inmates at the same time was a discretionary function of his job, the Court finds that
20 his decision was not a basic policy decision made at the planning stage of operations. In
21 governmental tort cases, "the rule is liability, immunity is the exception." *Lopez v. Southern Cal.*
22 *Rapid Transit Dist.*, 40 Cal.3d 780, 792 (1985). Defendant's decision to open cell doors is not
23 entitled to the exception.

24       Defendant cites to *Ne Casek v. City of Los Angeles*, 233 Cal. App. 2d 131 (1965), in support
25 of his qualified immunity argument. In *Casek*, the plaintiff brought a negligence suit against two
26 police officers who handcuffed two suspects, but allowed them to escape; the escapees collided with
27 a pedestrian and injured her. *Id.* at 133. The court found that the police officers were immune under

12

section 820.2 because "[a] police officer's duty to maintain effective custody of a suspect who has been arrested involves the exercise of much judgment and discretion concerning the means used to keep the suspect from escaping." *Id.* at 142. However, Defendant provides no authority for the notion that the decision of which cell doors to open and when rises to the level of the duty to maintain effective custody at the scene of an arrest. Further, Defendant admits that the Program Adjustment sheet required that inmates in A-6 be escorted from their cell door in handcuffs for medical appointments. The Court finds that this instruction tends to show that Defendant's decision merely implemented the Facility Captain's policy decision regarding the release of inmates from their cells.

Accordingly, the Court finds that the alleged negligent actions by Defendant are not the type accorded discretionary immunity under section 820.2. As Defendant provides no arguments regarding the merits of Plaintiff's state law claims, the Court further finds that genuine issues of material fact exist and Defendant's motion must be denied as to Plaintiff's negligence and negligence per se causes of action.

### IV.   CONCLUSION

Based on the analysis above, the Court GRANTS Defendant's motion for summary judgment as to his cause of action under 42 U.S.C. § 1983, and DENIES his motion as to his state law claims for negligence and negligence per se. The parties are ORDERED to attend a further settlement conference with Magistrate Judge Chen as soon as possible, but no later than 90 days from the date of this Order. All pretrial and trial dates are STAYED pending the outcome of the further settlement conference.

**IT IS SO ORDERED.**

Dated: June 20, 2007

MARIA-ELENA JAMES
United States Magistrate Judge

13